# Exhibit A-2

| | |
|---|---|
| **STATE OF MAINE**<br>**CUMBERLAND, ss** | **SUPERIOR COURT**<br>**CIVIL ACTION**<br>**DOCKET NO. CV-21-** |

| | |
|---|---|
| **RAYMOND KING,**<br><br>Plaintiff,<br><br>v.<br><br>**PATRIOT INSURANCE** and<br>**FRANKENMUTH INSURANCE**<br>Defendants. | )<br>)  **PLAINTIFF'S COMPLAINT**<br>)  **FOR DISCRIMINATION AND**<br>)  **RETALIATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**NOW COMES** Plaintiff, Raymond King, ("King") by and through his attorney of record, the Law Office of Guy D. Loranger, and complains against Defendant as follows:

## PARTIES AND JURISDICTION

1. King always mentioned herein was residing in the town of Saco, State of Maine.

2. Defendants ("Defendant") operate insurance companies with a location in Falmouth, Maine.

3. All incidents herein on which King sues occurred in the County of Cumberland, State of Maine.

4. King requests a jury trial.

## ALLEGATIONS

5. Defendants are a joint enterprise and/or subsidiaries of each other.

1

6. On February 11, 2019, Defendants hired King as a permanent employee doing maintenance at its Yarmouth, Maine location.

7. In August of 2019, King began to experience abdominal bleeding which ultimately led to a series of surgeries.

8. King went out on medical leave, and he did not return until October 22, 2019.

9. Upon King's return to work, Dianna Ridlon ("Ridlon") the administrator, began to take adverse employment actions against King.

10. The adverse actions included micromanaging King, making unfounded accusations about his work, being disrespectful to him, treating him differently than his coworkers and giving him assignments outside his normal responsibilities.

11. On November 11, 2019, Defendant's manager Barton Blegen ("Blegen") went to the Yarmouth location to follow up on an allegation by Ridlon that King had caused a temporary employment to quit.

12. King denied the allegation, and a co-worker told Blegen that King did not cause the temp to leave employment.

13. During Blegen's visit, King gave Blegen notice of Ridlon's behavior towards him. In response, Blegen assured King that if he ever felt the need to talk to him about Ridlon, to just to let him know.

14. Ridlon's abusive behavior towards King, however, did not end.

15. Accordingly, on December 26, 2019, King sent an email to Blegen, giving him further notice of harassment and bullying in the workplace by Ridlon. King wrote,

> Since we last spoke, you informed me that if I ever felt the need to talk to you in reference to Diane, just to let you know. I am letting you know; it is very stressful in the workplace and the constantly bullying needs to stop. I have spoken to you several times about this ongoing behavior towards me from Diane. I am hoping

> you can make time to mediate a workable solution b/c I deserve to be treated respectfully, just like everyone else, all these personal attacks by my supervisor are unprofessional and starting to become discouraging. I am letting you know and welcome your input.

16. On January 3, 2020, Ridlon had King fix the flat tire on a fellow employee's personal vehicle, a task not within his job responsibility.

17. On January 7, 2020, Blegen and Moore called King regarding Ridlon's behavior. In the discussion, King felt the targeted instead of being heard about his concerns.

18. King told Moore that if she had sent him her questions, he could have been better prepared for the meeting.

19. The meeting did not remedy the situation. To the contrary, Ridlon's bullying escalated.

20. On or about February 17, 2020, Ridlon instructed King to prolonged shoveling of snow in the parking lot which led to a back injury causing him to miss four or five days of work.

21. King has previously requested a small snow blower; Ridlon denied the request.

22. On February 28, 2020, Ridlon called King to the conference room where she had Blegen on remote video.

23. Ridlon proceeded to tell Blegen that King had refused to work with vendors to assemble cubical furniture.

24. In response, King explained that at the outset he told Ridlon that he had no interest at being a furniture installer, but he then still spent a day and a half assembling the furniture to its successful completion. King then pointed out the allegation as an example of Ridlon taking situations out of context to attempt to make him look bad.

25. In response, Belgen took no action, simply asking the two to ty to work better together.

26. On March 6, 2020, at approximately 1:15pm, King sent an email to Moore requesting to apply for a medical leave of absence for an upcoming surgery in early April to remove a cancerous tumor.

27. Within an hour of King sending the subject email, Ridlon called King to the conference room where he met with Ridlon and Moore on a conference call.

28. King assumed the call concerned his request for the medical leave of absence. Instead, King was questioned about a company umbrella which he had taken home and then returned. (Patriot Insurance kept umbrellas with its logo in the office)

29. At the end of the meeting, Defendants placed King on suspension pending an investigation.

30. On or about March 13, 2020. Defendant terminated King, alleging as a basis "the result of the investigation to the theft of a company umbrella."

31. The alleged basis for the termination is a pretext used to terminate King due to his ongoing medical conditions, his need to take additional medical leave for his upcoming surgery, and in retaliation for his complaints against Ridlon.

32. King subsequently applied for unemployment. Defendants opposed the unemployment, arguing the termination justified based upon the theft of a company umbrella.

33. The Unemployment Appeals Board rejected Defendants termination of King as justified, finding it did not amount to misconduct and therefore granted King's application for unemployment.

34. King has complied with all administrative requirements, and he has received a right to sue letter from the Maine Human Rights Commission.

## COUNT I: MEDICAL DISABILITY DISCRIMINATION

35. King incorporates by reference the allegations in the above paragraphs.

36. The MHRA makes it illegal for an employer to discriminate against an employee because of a medical disability.

37. King's medical conditions are disabilities as defined by the MHRA.

38. Defendant discriminated against King due to his disability.

39. Defendant's actions amounted to reckless disregard for the MHRA.

40. King has suffered the damages set forth below.

## COUNT II: RETALIATION

41. King incorporates by reference the allegations in the above paragraphs.

42. The MHRA makes it illegal for an employer to retaliate against an employee who has engaged in activity protected under the MHRA.

43. King engaged in protected activity under the MHRA by requesting medical leave and reporting Ridlon's behavior.

44. Defendants retaliated against King by taking the adverse actions described *supra*.

45. Defendant's actions amounted to reckless disregard for the MHRA.

46. King has suffered the damages set forth below.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court (1) enter judgment of favor of the Plaintiff and (2) award damages sufficiently large to compensate for damages he has suffered as a result of Defendant's conduct including, but not limited to,

damages for general and non-economic damages, economic damages, prejudgment and post judgment interest, lost wages, punitive damages, injunctive relief, costs of this suit, including reasonable attorney fees and costs, and such further relief the Court may deem proper.

Dated: February 18, 2021

*/s/ Guy D. Loranger*
Guy D. Loranger, Esq., Bar No. 9294
Attorney for Plaintiff

LAW OFFICE OF GUY D. LORANGER
1 Granny Smith Court, Suite 3
Old Orchard Beach, Maine 04064
(207) 937-3257

6